Judges, please stand and remain standing until I call your name and your name is called. Mr. Ekstrand, whenever you get settled, do not rush. Good morning. Good morning, Judge Duncan, Judge Diaz, Judge Agee. My name is Bob Ekstrand. I am counsel for the plaintiffs and appellants in this matter. I would like to reserve five minutes of rebuttal time, and I see the clock is set there. Your Honors, this case involves two primary issues, the first of which is a threshold procedural issue, and that is whether or not the plaintiffs, the appellants, E. L. and her parents, exhausted all administrative remedies that were available to her under the Individuals with Disabilities and Education Act. We have briefed this issue secondarily, but in reviewing the briefings and reviewing the posture of this case, I think it's important to address it up front, and the conclusion that I think this court has to reach is that the plaintiffs did exhaust all of the administrative remedies available to them under the IDEA. There is no question, of course, that the plaintiffs filed a due process petition under the IDEA. They conducted a full-blown hearing. It was administered by the state's Office of Administrative Hearings. The question is whether or not, under those factual circumstances, does the IDEA require the plaintiffs to, if they are aggrieved, before they go and file a complaint in state or federal court, do they have to go through what's called a second-tier state-level administrative review? And that is an appeal. Which, if you had done, this question wouldn't be before us now. Well, Your Honor. The exhaustion issue wouldn't be before us. I believe if we had filed a notice of appeal, that would be the only thing we didn't do with respect to the appeal to the state review officer. But, yes. You say that's the only thing, but that's a necessary thing. In some states, it is, Your Honor, but that's the point of this case. In this case, under IDEA, under the plain meaning of its appeal provision, the plaintiffs had no right to appeal to an SRO, a state review officer. The crux of your argument is that North Carolina doesn't have a two-tier system? North Carolina, it does not have... Because that first level, the administrative law judge level, is in fact a state level because it's centralized and organized by the Office of Administrative Hearings, which is a state entity. That's exactly right. Is that the argument? through a contract with the Office of Administrative Hearings, also a state agency. But the contract took over in order to bring some level of consistency to the individual local governments. Isn't that correct? Your Honor, I'm not sure that that's clear at all. That's what the state review officer said in his opinion. But the fact of the matter is the IDEA gives states two choices, essentially. Either the due process hearing can be conducted by the local educational agency or the state educational agency. What I'm trying to do is hone in on your argument. Your argument is that there was no local educational entity hearing because what took place was, in fact, run by the state by contract with local governments. Correct. That's exactly right. And your reason for arguing that local governments could not delegate or contract with the state to conduct those first-line hearings is what exactly? Your Honor, I'm not arguing that the local educational agency couldn't have conducted the hearing. Theoretically, North Carolina could choose to do that. And under subsection G of 1415, if a local educational agency conducts that hearing, then there's a right to appeal to the SRO. The statute's perfectly clear. But the local educational agency did not conduct this hearing. No, it contracted with the state to do it. And what I'm trying to get to is why you see that as a problem. Because the language of the statute compels the conclusion that you only have a right to or an opportunity to review by a state review officer if a local educational agency, as opposed to a state educational agency, conducts the hearing. I thought that the statute, the federal statute, had a definitional barrier for you in that it defines this last tier, whether it's the first one or the second one, depending on the state, as the hearing conducted by the state education agency, which it defines as the state board of education, more or less. The state board of education did not conduct the first tier hearing here. That's the problem. You've just touched on the whole analytical problem with the district court's order,  and the point is IDEA, the specific language says, if a local educational agency conducts the due process hearing, a party agreed can appeal to an SRO administered by the state board. By exclusion, there is no right of appeal to the SRO or the state board of education if it's not conducted, the due process hearing is not conducted by the local educational agency. Is the Office of Administrative Hearings part of the North Carolina Board of Education? No, sir. Doesn't that create a definitional problem? No, sir. In fact, the Department of Education, in the appendix to our reply brief in 2003, the Department of Education issued a letter ruling consistent with its regulations that says a state educational agency that contracts with its Office of Administrative Hearings, in that case it was Florida, like many other states do, the department ruled that if a state contracts with its Office of Administrative Hearings to conduct the hearing, it's still conducted by the state educational agency because that's the entity that's ultimately responsible for making sure that all the due process safeguards in the statute are met. For example, the 45-day rule and others. But in no event does a state educational agency actually adjudicate a hearing. They always have to hire an independent hearing officer who's not employed. Same thing if a local educational agency does it. There's a requirement that that presiding judicial official not be an employee or otherwise affiliated with either the local educational agency or the state. But I thought in the Florida case that you mentioned, the state entity delegated to the Office of Administrative Hearings Authority. It was factually distinguishable because it appeared that the entity, the relationship between the two was such that there was a delegation of authority to the state, which doesn't appear to be the case here. Or we have no record. I don't see anything in the record that suggests that that is the case. Well, there's a finding by the administrative law judge who adjudicated the case. He made the express finding that the hearing was conducted by the state educational agency in the sense that the IDA uses the term. Is that a factual finding? I think it is. And I think it's something that you could take judicial notice of because it's in the statutes. It's also something he's well aware of and it's undisputed. But the point is you don't have to get there, Your Honor. You don't have to worry as much about whether the state educational is contracting with another entity, whether that creates a distinction because IDEA is very simple. It says if the hearing is conducted by the local educational agency, that's the board, the defendant, the appellee in this case. If they conduct the hearing, then you can have a state-level review. You have a right to it. That's 1415G. And if you go down to F1A, it says if you don't have a right to that state-level review, which means if the hearing wasn't conducted by the local educational agency, you have a right to direct appeal to state or federal court. How does that statute bar an additional level of review within the state agency, even if you're right? Four canons of construction. The plain meaning of it I've just discussed. But you didn't say anything about requiring or prohibiting additional layers of review. It simply says the review lies within the state agency. There's nothing in that statute that I see that bars an additional level of review within the state agency. But, Your Honor, I would suggest to you that the first canon of statutory construction we talk about, which is, I'll butcher this, inclusio unis est exclusio alterius, which basically is, as you know, the inclusion of one thing means the exclusion of others. So the inclusion of a right to appeal to an SRO if the state, I'm sorry, if the local educational agency conducts the hearing, that excludes the circumstance we're in, where the state, or actually, more specifically, the local educational agency did not conduct the hearing. So we move to F1A, which says- It would appear that that canon would apply if the rights were mutually exclusive. But there's nothing mutually exclusive about granting a petitioner an additional level of review within the state agency. How is that a problem? Well, it becomes a problem if, like us, we ask the ALJ to tell us, was this hearing conducted by the local educational agency under subject- Well, that's not fair. You suggested the result with respect to the ALJ's conclusion. Sure. You proposed that finding. The finding that the local educational agency didn't conduct the hearing. I don't think there's a dispute about that. You also proposed the finding that this was the only layer of review, and the next level of review would be a lawsuit. Isn't that right? Yes, sir, a review in state or federal court, because that tracks the statute. That tracks IDEA. And I wanted to know what our appeal- Does the IDEA prohibit any- Does the IDEA prohibit a local entity from contracting out the performance of the services? No, it has to, because it's got to be independent of the local educational- The judge has to be independent. It just can't be, as you conceive of it, a state entity. Well, it could be, but it has to be separate than the local educational agency. So, yes, if your question is could a local educational agency contract with the Office of Administrative Hearings- Which has to be separate? It has to be independent. The local entity of what? Of the local entity? Both. And the state? Both. And you say it- You have said that the Office of Administrative Hearings is independent of the State Board of Education. Yes. So, what is the problem with the relationship with the local educational entity? The only problem, the only issue, is that the local educational agency did not conduct this hearing. And under subsection G of 1415- Well, you just told me it had to be independent of. Well, that's- I think you're getting hung up on the word conducted. And that's, I think, a term of art as it's used in the statute. The LEA and SEA don't adjudicate the hearing. They always have to find an independent hearing officer. Some states do have the local Board of Education hiring hearing officers from a list. I've identified the eight states that are left that do that. But if the state law, under IDA, the statute spells it out, if state law gives the responsibility for making sure that the due process hearing is conducted according to the procedural safeguards of the statute, then the SEA is conducting the hearing. Why wouldn't you have filed a protective notice of appeal here with the state review officer, whoever the second level is, and then made this argument there? You would have preserved everything. I wish I had, to be honest. But what I tried to do was make that clear for everyone by asking the judge in an explicit issue to tell the parties what their responsibilities vis-à-vis appeal were. And the other part of this is that there is... You were asking the state review officer or the U.S. district judge? No, I was asking the ALJ, the hearing officer in the first level. And the hearing officer, he made findings. He said that I'm operating pursuant to a contract with the state Board of Education. This hearing was not conducted by the local educational agency or overseen by the local educational agency, and therefore there's no right of appeal. Not the state Board of Education? He was acting pursuant to a contract with the state Board of Education. That was his finding. That's the state educational agency. And so, Your Honors, I would just emphasize that the plain meaning of the statute, also the Canada of Construction, Exclusio Unis, as well as Congress' acquiescence in the clear statement of policy by the Department of Education that's been existing for 10 years, over 10 years, that we've included in the appendix to our reply brief, which says clearly that where the state educational agency is made responsible for the hearing under state law, and they contract to their Office of Administrative Hearings, as they did in Florida, that does not create a two-tier system. That's a one-tier system. There is no right to review by the state educational agency. And so you have to proceed directly to federal court or state court for review. Thank you. I'll reserve the rest of my time. You have some time for rebuttal. Thank you. May it please the Court, I'm Kenneth Hsu for the Chapel Hill-Carborough City Schools, the appellee in this case. The IDEA authorizes the state of North Carolina to assign responsibility for the local hearings to the Office of Administrative Hearings, which your Honors have pointed out is not the state educational agency. When you talk about the provisions that we've been discussing in 1415, the only specifics are what are the... If the local school board here, the Chapel Hill School Board, decided it wanted to conduct this first-level hearing, does it have the legal authority under North Carolina law to do that? North Carolina school boards are subdivisions of the state. Their authority is granted to them by the state. And in North Carolina, not the state educational agency, but the General Assembly of North Carolina has said that the local hearings will be conducted by the Office of Administrative Hearings in the county or school district where the student attends school or is entitled to attend school. In this case, it happened not in that county, as the statute allows the parties to agree to have it elsewhere, and the parties did so in this case. The local school board could not have conducted the hearing itself. Well, so that is an interesting question. The local school board did not have the ability to do anything other... Thank you, Your Honor. ...to do anything other than host a hearing where an administrative law judge for the Office of Administrative Hearings conducted it according to the rules of evidence and on the timelines established by the Office of Administrative Hearings. To go back to what the statute says... There's no contract between the local school board and this Office of Administrative Hearings. There is no contract. There's no contract between the school board, the state educational authority, the state board, and the Office of Administrative Hearings. The statute says the state board will enter into a memorandum of understanding that ensures that the OAH hearings will be conducted in compliance with IDEA and state special education law. The statute says the impartial due process hearing shall be conducted by the state educational authority or the local educational authority as determined by state law. And you could just say, well, that means as determined, which do we pick? But if you want to have a view that allows states to adapt to their unique circumstances, that as determined creates flexibility. And interestingly, the 2003 letter that's attached to the appellant's amended reply brief supports our position. What the education department says is IDEA, in a state that is a one-tier state, does not preclude the SEA from assigning the state educational authority from assigning responsibility to conduct hearings to an entity other than the SEA. And that is despite the language that we've just discussed that says that the impartial due process hearing shall be conducted by the state educational authority or the LEA. And the only way to read that consistently is to say that there is discretion to assign. The only specifics about these hearings are not what kind of contract. So let's say North Carolina law said local educational authorities are directed to enter into a contract with the Office for Administrative Hearings to conduct these hearings. I mean, semantically that might be more comfortable, but it would be a distinction without a difference. So, Mr. Hsu, are you saying that North Carolina is a one-tier state if, in fact, it's consistent with the Florida provision? I don't think I explained my position on the Florida statement very well. North Carolina is clearly a two-tier state. What the Department of Education said in that opinion letter is there is flexibility in figuring out who holds the state-level hearing in a one-tier state. And by analogy, by the same token, in a two-tier state, there is flexibility to determine how the local hearing is conducted. Well, but the flexibility that you described in the Florida statute in the letter was flexibility to delegate the authority to a local OAH or equivalent in Florida. How is that any different from what's happening in North Carolina? Well, it's different in the sense that North Carolina has a two-tier system that has a purpose. You have a first tier that is conducted, and going back to the specific requirements in IDEA, what are they? They don't say what it means for a hearing to be conducted by one or the other. They say you have to have somebody who is able to conduct a hearing according to appropriate legal standards, someone who has knowledge of special education law, someone who's able to issue, written, and decide a case according to appropriate legal standards. I guess my question is there really is no role that the local education agency plays in North Carolina's system. They generally host or often host the hearing? Well, it's a ministerial role, but not a substantive role. So what does contract mean? For example, if you take the position that the state educational authority in Florida actually has to conduct that hearing, call the witnesses in, and everything else, then you're going to apply the same language to say as that Department of Education letter says, all these states that contract out that level of hearing are not in compliance with the law. Well, not necessarily, because I think my view of this case is that even if North Carolina could be characterized as a one-tier system, there is nothing to bar the state from implementing an additional level of review within the state agency. And it may be that to some degree we're talking about semantics and we agree, I mean, because the bottom line is you have a system in North Carolina where we have a professionally run by an administrative law judge hearing, and then you have a state-level review. And you notice in this case it's a quick review. It took one month from the time of our appeal to the state review officer issuing a decision. That person has to be a special educator or someone specially qualified. Those two things serve different purposes. That's the system we've adopted, and it meets every procedural requirement that IDEA has for people who are conducting these hearings with special knowledge of appropriate legal procedures, for people who have knowledge of special education law. And there are many procedures in North Carolina that go beyond what the IDEA guarantees. The ALJ hearing offers a discovery process and conduct according to the rules of evidence, North Carolina rules of evidence, and in all ways meets or exceeds any specific requirement. I think the point is that regardless of that, the argument is that it's not a local educational agency for purposes of triggering mandatory review to the state entity. Well, we have review. Those are the rules. Everybody understands them. I mean, my argument, and I think I may be in disagreement with the position that Judge Diaz has stated, is that when the statute says, shall be conducted by the SEA or LEA as determined by state law, it gives flexibility. I mean, again, if state law said, local boards of education, you have to contract with the Office of Administrative Hearings, would there be any difference? And if you start interfering with how these things are done in all different states by saying, oh, no, no, it says it must be by the SEA, as in Florida. Therefore, Florida, you don't have a system. The Department of Ed said there's nothing in IDEA that prevents one level of hearing or the other, that's my implication, from having a different designated hearing officer, particularly when it's in the interest here of impartiality. So when we go back to what does it mean for the local board of education to conduct the hearing, they certainly can't conduct the hearing. They can't call witnesses. The statute specifically says you have to have somebody who's not an employee of the local board of education, not an employee of the state board of education, who does not have any other professional or personal conflict. How else are you going to do that but with somebody like an administrative law judge? And as I emphasized before, I think, there is no specific requirement that there was any violation of due process, any lack of procedure. The hearing went on for the better part of three business weeks, and it was very plain to all sides when we appealed that we were operating under North Carolina law. And in this case, the petitioners, plaintiffs, appellants chose not to appeal. There is, of course, the substantive issue, and we believe that the issue before the court in terms of substance services offered to this disabled student was the administrative law judge correct or was the state review officer and Judge Schroeder correct when they said that that student received sufficient speech-language services, one component of her program. As a general background, in an analogous vein, IDEA puts the responsibility on the local educational authority to provide educational services. In this case, the Chapel Hill-Carborough schools contracted with Frank Porter Graham Child Development Center, which is an internationally recognized center that does a research-based program that has embedded therapy and embedded services where they put disabled children in classrooms with their typically developing peers. And the theory there, and it was spelled out on the IEP, as Judge Schroeder notes, that the parents signed in this case, that therapy would be administered throughout the school day in an embedded fashion. And what that means is the therapists are there much of the day. When they see opportunities, when disabled children are interacting with other children, disabled or typical, that's when they apply therapy. They use real-life situations. And part of that is based on the notion that, as opposed to a more strictly conditioning approach, approach that would be more purely like the theories of B.F. Skinner, kids are going to be better prepared if they learn how to operate in the kinds of environments they're going to face in the world. And so there's this fundamental difference about methodology. The administrative law judge said the IEP, including the IEP that said, these services, including speech-language, will be offered in an embedded fashion throughout the school day, was appropriate for the student. And every decision-maker all the way up has said that she made progress. There are one example of a deficiency or an alleged deficiency that the appellants have put forth. There's this chart that suggests that the student, that E.L. did not get all the sessions that she was required to get. That is, once again, about methodology. She might not have gotten one-on-one sit-down sessions where she received operant conditioning from a therapist without anybody else present, but she was receiving this therapy throughout the school day. And there is an issue about one of the speech-language therapists whose notes were destroyed because they had many students' names and she was concerned about confidentiality. There's been no finding by any decision-maker that the speech-language therapist did not provide the full range and beyond the full range. The testimony was we met and exceeded those minimums. We might not have written it down every time because of the methodology that we used. Isn't there a concern that some of the therapy had been provided by interns as opposed to properly licensed therapists? Well, that is a concern that appellants raise. These are master's degree-level students who are operating under the supervision of a licensed therapist and it was that testimony that that was adequate. That is what the decision-makers have found all the way up. Does the IAP say anything about who is to provide the therapy? There is no specific federal requirement about what state licensing requirements must be. These are students who, as part of their programs, are required to administer clinical services. There would be no way for the profession to advance otherwise, and there is no specific showing that they were unqualified, did not have the background to do so, that the clinical programs were somehow deficient, were not preceded by sufficient classroom training, and so on. That's part of the institution. It is a teaching institution as well as an institution that provides services. Just applying the label, well, these are interns, is about as far as the complaint has gone. There's nothing more substantial than that about the quality of what was provided. Um... In summary, Your Honors, all the decision-makers in this case have found that the IAPs were appropriate. All the decision-makers have found that the student made progress. It was almost a three-week hearing. There's a boatload of evidence about how specific that progress was. The last speech-language therapist described an incident in which the child was sitting with her, interacting with the typically developing peers, her friends who were around her. We think that it was an outstanding program at a world-class center, and that the real difference in this case is about methodology. The parents, and they had the right to want a specific methodology, wanted a one-on-one conditioning approach for the child. All the evidence is that the approach that we used, a holistic approach where the child was educated with master's degree and doctoral degree-level staff in a classroom that's specifically designed for this purpose, was more than adequate for her and generated a lot of growth. We ask that you uphold Judge Schroeder on all points in his decision, including, as we noted, there's a lot in Appellant's brief about the more general issues that were not appealed. We ask that it be confined, as Judge Schroeder found, that you find that in the speech-language area we provided services and that Plaintiff Appellants, in this case, failed to exhaust their administrative remedies. Unless there are any further questions, I will sit down. Thank you. Thank you. Mr. X. Thank you, Judge Duncan. If I might, and I want to emphasize that I think some of the substantive issues are difficult for this court to address. Most of the substantive issues, frankly, are difficult for this court to address because the district court did not reach four and a half out of five of our theories of FAPE deprivation in this case. But what he did reach was the question of whether or not Ella was given the speech-language pathology services that her IEP prescribed. And with respect to that, I want to address two points, one in each IEP year. In the first IEP year, the ALJ found that she was not given the speech-language pathology services she required because they were not administered by the speech-language pathologist's own admission. They were not administered by her. Although she signed various progress notes along with one of her interns, it was never disclosed until her testimony in the hearing when she was asked, does that mean you supervised the therapy? She said, no. It just means I supervised the notes, meaning she read them. So why is that a disqualifying factor? Because under the standard is that disabled children must be given education according to the state's standards at a minimum. North Carolina's standard with respect to speech-language pathology services is that they must be delivered by a licensed, certified speech-language pathologist. None of those interns were trained, certified, or licensed. In fact, the SLP testified that she really didn't train them for ELLUP in particular. And what she found was, of course, as a result, all of the goals that they were working on that year, no progress. You don't have to look at the testimony. You can look at the IEPs. They did not change. They carried over year after year. The district court judge both said that there was clear evidence that there was progress. What I think that's been confused, and I think the ALJ's factual findings are based on credibility determinations that the district court should not have upset, but the SRO did as well under this court's holdings. But most importantly, the confusion, I think, is that from halfway through Ella's first year, her parents, because she could not make functional speech sounds, she could not deliberately make a functional speech sound,  where they specifically worked on those consonants, vowels, the particles that make up this functional speech. That's where she progressed. And the only evidence in the records from the school was an intern's realization halfway through the spring that somehow Ella seems to be making speech sounds. I don't know how it happened, but it happened with the private therapy. Excuse me. I thought that the review officer determined that the board delivered the services specified at the IEP, that EL did receive the speech-language therapy, and the IEP did not direct, did not require direct one-on-one therapy. And the district court agreed, but none of the bases appear to be credibility-driven. Well, Your Honor, I think that the ALJ's findings were, the ALJ's findings were based on, in the second year, his expressed credibility determination that Melissa Felicelli, the SLP who actually administered her second year's IEP until she quit because she wasn't allowed to administer Ella's IEP, he gave her, he credited her testimony in the second year, and in the first year, he credited the SLP Kathy Davis's own testimony and evaluated her testimony in which she finally conceded that no, she didn't deliver the services that Ella's IEP required. But, Your Honors, that's just one-fifth of the faith deprivation theories that we advanced. I think the most important one, frankly, and the easiest one that nobody's addressed at the SRO level or the district court level, and I fear the ALJ didn't touch it either, is that Ella was mainstream beyond her capacity. In other words, she had no ability to derive benefit from a classroom of 15 other students with one teacher without one-to-one supplementary aids and services. In other words, an adult that's facilitating her participation. And that is not what, that is something the IEP that the defendant proposed all three years did not provide. That was theory number two. But we think that the substance of those arguments aren't properly before the court because the district court didn't address that. We'd ask for a remand on that basis. Thank you very much, Mr. Ekstrand.
judges: Allyson K. Duncan, G. Steven Agee, Albert Diaz